HENRY C. MEAD, Appellant, v. WILLIS B.
ARNOLD, Respondent.

Kansas City Court of Appeals, May 25, 1908.

1. **REAL ESTATE BROKER: Commissions: Defense: Evidence: Instructions.** In an action to recover commissions for the sale of defendant's land where the evidence shows the transaction was finally completed through another broker, the defendant may show that the plaintiff's efforts were ineffectual and produced no impression upon the mind of the purchaser; and instructions set out in the opinion bearing on such defense are approved.

2. ———: ———: ———: ———: **Procuring Cause.** In an action by a broker to recover commissions, where the evidence shows that the transaction was completed through a rival agent, the conversation between the seller, the purchaser and the rival agent at the time of the consummation of the business is admissible, where it directly tends to show the true nature of the procuring cause.

Appeal from Saline Circuit Court.—*Hon. Samuel C. Davis,* Judge.

AFFIRMED.

*Com. P. Storts, Virgil V. Huff* and *Alf. F. Rector* for appellant.

(1) The case was properly tried in the circuit court. The evidence showed that the sale of the farm was not made by the plaintiff or through his efforts. The question as to whether or not the plaintiff was the procuring cause of said sale being made was submitted to the jury, under proper instructions, and the finding was against the plaintiff, and such finding is conclusive. There was no interplea, and the case of Hartsook v. Chrissman, 114 Mo. App. 558, does not apply. Gamble v. Grether, 108 Mo. App. 340. (2) Instruction numbered one given for the defendant was proper and is a correct statement of the law, and was based on the evi-

dence. Stinde v. Blesch, 42 Mo. App. 582, 19 Cyc. 283; McGuire v. Carlson, 61 Ill. App. 297; Glascock v. Vanfleet, 100 Tenn. 603. (3) Before the appellant can claim commissions he must have produced a purchaser in the sense that he shall be the inducing or procuring cause of the sale. It was appellant's duty to show by the evidence that his acts brought about the sale. This question was found against the appellant by the jury under proper instructions and is conclusive. Ramsey v. West, 31 Mo. App. 687; Crowley v. Sommerville, 70 Mo. App. 376; Gamble v. Grether, 108 Mo. App. 340; Pollard v. Banks, 67 Mo. App. 187. (4) Plaintiff complains that the statements made by Leimkuhler on the day of the sale at the Arnold house were not competent evidence, and that it was error to admit them. Plaintiff on his direct examination was asked to give the conversation he had with Arnold over the phone on the day of the sale, which he did. This brought out the Leimkuhler statements, and all that occurred. If this was error, it was committed by the plaintiff. (5) It was proper to show by the statement of the purchaser his state of mind regarding the effect the efforts of Mead had on him in making the purchase. Folks v. Barnett, 47 Mo. App. 564; 19 Cyc. 283, note 59; McGuire v. Carlson, 61 Ill. App. 295; Hunn v. Ashton, 96 N. W. 745; Goldsmith v. Cook, 14 N. Y. Supp. 878.

*W. M. Williams, R. M. Reynolds* and *D. D. Duggins* for respondent.

(1) The defendant's original answer, in the nature of an interplea, had been stricken out, and it was prejudicial error to claim on the trial that they were entitled to the commission. Hartsook v. Chrissman, 114 Mo. App. 558. The defendant could have, by his acts and contracts, been liable to both the plaintiff and the Haines Brothers. The only question in the case was, did the plaintiff find the purchaser, or was he the pro·

curing cause of the sale. (2) This is a suit by plaintiff against the defendant for commissions for finding a purchaser for defendant's $46,000 farm; and if the plaintiff found the purchaser, or was the procuring cause of the sale, that is, finds a buyer, then he was entitled to a verdict for the commission. Wright v. Brown, 68 Mo. App. 582. (5) Instruction numbered one, given for the defendant, is clearly erroneous, confusing and misleading, for the reason that it injects into the trial of the cause a case of Haines Brothers v. Arnold, and tells the jury that if the sale was made by and through the efforts of Haines Brothers, then the plaintiff could not recover. This instruction directly injects the theory of an interplea into this case. Hartsook v. Chrissman, 114 Mo. App. 558; Wright v. Brown, 68 Mo. App. 582; Brennan v. Roach, 47 Mo. App. 297. (4) Instruction numbered two, asked for and given in behalf of defendant, is erroneous in this, that it singles out certain facts or portions of the evidence, and calls the jury's attention to these facts, and tells the jury under these conditions the plaintiff could not recover. (5) The court erred in permitting the defendant to testify to conversations he had with Charles Leimkuhler in the absence of the plaintiff.

JOHNSON, J.—Action by a real estate broker to recover a commission alleged to be due him on account of the sale of a farm owned by defendant. Verdict and judgment were for defendant and the cause is here on the appeal of plaintiff, who argues that prejudicial errors were committed against him by the trial court in the admission of evidence and in the instruction of the jury.

At the times mentioned in the evidence, plaintiff was engaged in the business of real estate agent at Slater in Saline county. Defendant was the owner and occupant of an exceptionally well improved farm of

466 1-2 acres situated about four and a half miles north-
west of that city. In 1904, defendant requested plain-
tiff to find him a purchaser at $100 per acre and agreed
to pay him a commission of two per cent should a sale
be made to a purchaser procured by him on the terms
proposed. Plaintiff listed the place and advertised it
to some extent but did not succeed in finding a person
who might buy it until August 4, 1905. On that day,
Charles Leimkuhler, a farmer living near Osage, came
to plaintiff at Slater and announced his purpose of buy-
ing a farm in that vicinity for a home. He said he had
$38,000 in money, which he was willing to spend in the
contemplated purchase and, if necessary, he would pay
more than that sum for a farm he liked, by going into
debt for the remainder of the purchase price. Plaintiff
then showed Mr. Leimkuhler several farms south of
Slater, but none of them pleased him and, on their re-
turn, plaintiff stated he had some farms north of town
which he would like to show but that prices there were
somewhat higher. The next day the parties met on the
street in Slater and Mr. Leimkuhler asked for informa-
tion respecting the farms north of town and was in-
formed by plaintiff that he had the very place that
would suit him. Plaintiff then described minutely de-
fendant's farm and its improvements, whereupon Mr.
Leimkuhler remarked (so plaintiff testified): "That
sounds good to me; there are not many like that."
Plaintiff offered to show the place at once, but Mr.
Leimkuhler said, "I have not time. I will be back here
in two weeks or less. I will go with you to look at that
farm and if it suits me I will buy it." Further, plain-
tiff testified: "He (Leimkuhler) said he was going to
Alma, I thought he said Lafayette county, and from
there home. He told me he had not completed the sale
of his half interest in the McClelland farm; that he and
Henry Leimkuhler owned that together and Henry had
made a price on it and that he would probably give a

little more, that he was going to sell it to him and probably he would get a little more for it. . . . There were 624 acres, his half interest would be 312 acres."

Plaintiff did not inform defendant of what had occurred between him and his prospective customer, being fearful that "when there was $900 involved somebody might slip in and beat you out of it." Ignorant of the fact that plaintiff had a customer in hand, defendant, a week later, listed the farm with Haines Brothers, real estate agents at Arrow Rock, another town in Saline county. In the afternoon of August 15th, Charles and Henry Leimkuhler accompanied by the Haines Brothers appeared at defendant's farm, looked it over, and the next morning decided to buy it at $100 per acre. A conveyancer was procured from Slater, who came out and prepared the necessary papers. The deed was made to Henry Leimkuhler on the request of Charles who explained that he (Charles) had bought Henry's interest in the McClelland farm and that Henry had concluded to buy another farm for himself. While the negotiations were in progress, Charles remarked that he believed the farm was one mentioned to him by plaintiff, whereupon defendant, to avoid the possibility of being compelled to pay a double commission, refused to proceed with the transaction unless Haines Brothers would guarantee him against liability to plaintiff. Accordingly, such guaranty was given and defendant paid the commission for the sale to Haines Brothers who gave $200 of the money thus received to Charles as a present.

On behalf of defendant, the evidence tends to show that Haines Brothers had conducted previous dealings with the Leimkuhlers, were tenants of a farm they owned and were on very friendly terms with them, and that the Leimkuhlers came uninvited to Arrow Rock for the purpose of looking at land near Slater with a

view to purchasing a farm. W. W. Haines testified in part as follows:

"He (Charles) came to my house, he and his cousin, Henry Leimkuhler, and stayed all night on the night of the 14th. That morning I showed them a farm close to Arrow Rock. They said it didn't suit them and asked me if I had any other farms for sale. I told them that I had. I had a farm belonging to Willis B. Arnold northwest of Slater. It was a fine farm and all in grass excepting 120 acres. It has an $8,000 house, well fenced, good windmill, steel tanks and reservoir; and we went on then to the other farm known as the McClelland farm and ate our dinner and they agreed there whichever one was satisfied that the other would buy the other one out of the McClelland farm. They owned it in partnership. After they got in the surrey and started on, one of them asked where we were going. I said we were going to see the Arnold farm and described it again. They said, 'all right, we will go.' I went around by Orearville through the western part of Slater out to Mr. Arnold's and got there about night and about a half hour by sun we looked over west of the barn and the next morning we went over the farm and got back to the house about ten o'clock and Mr. Charles Leimkuhler and me sat down in front of his place on a rock there and he says, 'Well, Haines, I am going to buy this farm.' I said, 'I am glad of it. I am going to make you a present of $200, inasmuch as you men have bought land from me before.' He said, 'That is all right.'" Henry Leimkuhler testified to the same effect. Charles Leimkuhler died before the trial began.

Other facts and circumstances appear in the record which we do not deem of sufficient importance to relate. Suffice it to say that plaintiff made out a case to go to the jury on the issue of whether his conversation with Charles Leimkuhler was the procuring cause of the

sale, while from the evidence adduced by defendant, it would appear to a reasonable mind that other causes moved the Leimkuhlers to go to Arrow Rock in quest of land and that but for the efforts of Haines Brothers they would have given no further thought to defendant's farm. Such was the theory of the case adopted by the trial court and by the parties themselves as will appear from the instructions given to the jury, which were as follows:

At the request of plaintiff: (1) "If the jury find and believe from the evidence that prior to the sale of the land described in the petition, by the defendant to Charles Leimkuhler, the plaintiff had said land listed for sale at the defendant's request and as agent for the defendant, and that on the 5th day of August, 1905, the plaintiff met Charles Leimkuhler at the city of Slater and fully described said farm, buildings and improvements to said Leimkuhler at the price and sum agreed upon between plaintiff and defendant and offered to show said farm to said Leimkuhler, and that said Leimkuhler promised to return, go and see said farm and purchase the same through plaintiff from the defendant, provided the same suited him, and that said Leimkuhler did, on the 16th day of August, 1905, return and close said trade with defendant, and if the jury further believe from all the facts and circumstances in evidence that the said Leimkuhler was led to buy said farm, and the closing of said trade by reason of the information given him by the plaintiff concerning said farm, then the verdict must be for the plaintiff, and this is true notwithstanding the fact that said Leimkuhler was taken to said farm by another agent or party, and such other agent or party was actually present at the time said sale was closed."

(2) "If the jury find and believe from the evidence that the plaintiff procured a purchaser in the person of C. Leimkuhler, for defendant's farm or was

Mead v. Arnold.

the procuring cause of said C. Leimkuhler purchasing said farm then the finding will be for the plaintiff in the sum of nine hundred and thirty-three dollars."

For defendant: (1) "The court instructs the jury that defendant had the right to place his farm in the hands of as many real estate agents for sale as he desired, and if you find and believe from the evidence that the sale of farm was made to Charles Leimkuhler by and through the efforts of Haines Brothers, real estate agents, and that Leimkuhler was induced to go and look at the Arnold farm at the instance and request of said Haines Brothers, and that plaintiff did not induce him to look at, bargain for and purchase said farm, and that said Haines Brothers were the procuring cause of bringing said Leimkuhler and Arnold together, and were the procuring cause of said Leimkuhler purchasing said farm, then the plaintiff has no claim for compensation for the sale of said farm, and your finding will be for the defendant."

(2) "The jury are instructed that before you can find for the plaintiff, you must find and believe from a preponderance of the evidence that is the greater weight of the credible testimony, that Leimkuhler was induced to buy the defendant's farm by and through the efforts of plaintiff, and that plaintiff was the procuring cause of said sale being made. It is not sufficient that the plaintiff may have called Leimkuhler's attention to the Arnold farm, and informed him that it was for sale, and described it to him and tried to sell the same to him some time before Leimkuhler purchased it, unless you find from the evidence that by reason of what was done and said by plaintiff, Leimkuhler was induced to buy said farm."

We think the objections urged against the instructions given on behalf of defendant are not well taken. What we said in Hartsook v. Chrissman, 114 Mo. App. 558, evidently has been misunderstood and misapplied

by the learned counsel for defendant. It is true that in a suit brought by an agent against his principal to recover a commission, the defendant has no right to have another agent who claims the commission brought into the action as an interpleader, but nothing we said in that opinion militates against the rule that where a real estate agent sues for a commission, the defendant, as a matter of defense to the cause asserted, is entitled to show that the efforts of the plaintiff were not the procuring cause of the sale and, to do this, may introduce evidence to the effect that the efforts of another agent employed by him were the procuring cause, since such evidence has a direct tendency to disprove one of the indispensable elements of the plaintiff's cause of action. Courts have been careful to protect the agent who shakes the tree against the predations of a rival who would gather the fruit for himself, but they have been just as careful to protect the second comer whose toil has been productive against the unjust claims of the first whose efforts were impotent. We said in Ramsey v. West, 31 Mo. App. 676: "The broker must be the procuring cause of the contract on which he depends for his recovery. It will not suffice for his act to be one of the chain of causes producing the contract; for it must be the procuring or inducing cause, or, as it has been said, it must be the *causa causans.*"

From the facts and circumstances before them, the jury reasonably might have believed that the conversation plaintiff had with Charles Leimkuhler made no lasting impression on his mind, did not influence him to return to Saline county and that he and his cousin were directed to the Arold farm by the efforts of Haines Brothers. Defendants were entitled to have this hypothesis of facts submitted to the jury and if accepted by them it then would become their duty to return a verdict for defendant on the ground that plaintiff had failed to establish one of the facts constitutive of the

Mead v. Arnold.

cause pleaded. The instructions criticised properly presented this vital issue of the case.

Over the objections of plaintiff, defendant's witnesses who were present at the making of the sale were permitted to testify to the conversation between the parties relative to the indemnification of defendant against a possible claim on the part of plaintiff to the commission. In the course of the conversation, Charles Leimkuhler stated, in effect, that what plaintiff had said to him had passed entirely out of his mind until about the time of his arrival at the farm. The objection to the whole conversation is based on the ground that what the parties said to each other during the progress of the negotiations was hearsay as to plaintiff who was not present and, therefore, should not be bound by what others might say in his absence. We might answer the objection by saying that as plaintiff himself first went into the subjects of this conversation, he is in no position to complain of defendant's meeting an issue thus raised, but we prefer to place our ruling on a different ground. As we have said before, one of the principal issues of fact to be solved by the jury was the question of the effect produced on the mind and purposes of the purchaser by the conversation he had with plaintiff. That question could not be answered correctly except in the light of subsequent acts and declarations of the purchaser in and about the purchase of the farm. Such declarations made in the presence of defendant were not hearsay but were oral acts of probative value. They directly tended to evidence the true nature of the procuring cause and for that purpose were admissible. [Folks v. Burnett, 47 Mo. App. 554; 19 Cyc. 283, note 59; McGuire v. Carlson, 61 Ill. App. 295; Hunn v. Ashton, 96 N. W. 745; Goldsmith v. Cook, 14 N. Y. Supp. 878.]

A careful inspection of the whole record convinces us that the case was properly tried and submitted to the

jury. We perceive no reason for interfering with the judgment. Accordingly, it is affirmed. All concur.