# R. H. CRAIN et al., Respondents, v. S. W. MILES, Appellant.

### Springfield Court of Appeals, February 6, 1911.

1. **PLEADING: Contracts: Justices' Courts: Real Estate Broker.** In a suit before a justice of the peace for real estate agents' commission, the petition alleged that plaintiffs were partners doing a real estate business and at the instance and request of defendant they found a buyer for defendant's farm, but it did not allege that defendant had agreed to pay any commission for their services. *Held*, that as this was a statement before a justice of the peace it would not be viewed with a too critical eye, and that the allegations were sufficient as a statement of an implied contract by which defendant was to pay plaintiffs the reasonable value of their services.

2. **CONTRACTS: Implied Contracts to Pay for Services.** Where one performs valuable services for another, who accepts the same and the circumstances surrounding the transaction do not show the services were to be gratuitous, or where one person performs services for another at the latter's request, the law implies a contract to pay a reasonable value for such services.

3. **REAL ESTATE BROKERS: Implied Contract: Procuring Cause of Sale: Sufficiency of Evidence.** In a suit for a real estate broker's commission, the evidence is examined and *held* sufficient to entitle plaintiff to go to the jury on the theory that there was an implied contract to pay a commission and that plaintiff was the procuring cause of the sale.

4. ———: **Procuring Cause of Sale.** To entitle a real estate broker to his commission he must be the procuring and inducing cause of the sale. It is not sufficient that the act of the broker was one of a chain of causes bringing about the sale.

5. ———: ———: **Commissions: Burden of Proof.** In an action for a real estate broker's commission the burden of proof is upon the broker to show not only that he opened negotiations with the purchaser, but that the sale was actually effected through his means and not by the intervention of new parties.

6. ———: ———: ———: **Sale by Another.** Where a real estate broker fails to get his offer within the terms of his authorization and the purchaser afterwards buys the same property on the same or less terms than those on which the first agent had authority to sell, the chain of causation would be

broken, since the efforts of the first agent would have procured no result and his labors would not be the proximate, legal or procuring cause, and therefore he would not be entitled to any compensation.

7. ———: ———: ———: **Deal Closed by Another.** The owner of real estate may authorize more than one agent to sell and in the absence of a distinct contract to the contrary where a sale is made, the commission belongs to the agent whose efforts are the procuring cause of the sale no matter which one may close the deal.

8. ———: ———: ———. Where a real estate agent sets on foot a sale of property which wholly fails and after such failure another agent steps in and makes the sale to the party negotiated with by the first agent, even though the work of the first agent may have made some impression or had something to do with the sale, yet in legal contemplation he would not be the procuring cause thereof and would not be entitled to any compensation.

9. **EVIDENCE: Excluding Cumulative Evidence: Harmless Error.** Exclusion of cumulative evidence does not ordinarily constitute reversible error.

Appeal from Jasper Circuit Court.—*Hon. David E. Blair*, Judge.

AFFIRMED.

*R. A. Mooneyham* and *Lee Shepherd* for appellant.

(1) To entitle a real estate broker to his commission he must be the efficient cause in finding a purchaser and the facts in this case fail to show the plaintiffs were such cause. Pollard v. Bank, 67 Mo. App. 187; Gamble v. Grether, 108 Mo. App. 342; Bochant v. Higgins, 20 Mo. App. 514; Crowley v. Summerville, 70 Mo. App. 376; Campbell v. Van Stone, 73 Mo. App. 74; Warren v. Cram, 71 Mo. App. 639; Wolfe v. Rosenberry, 67 Mo. App. 403; Earp v. Cummins, 54 Pa. State 394; Life v. Luedwick, 14 Ill. App. 372; Seivers v. Griffin, 14 Ill. App. 63; Wylie v. Bank, 61 N. Y. 416; Armstrong v. Wann, 29 Minn. 126; Ames v. Cammeron, 19 D. C. 435;

Means v. Stone, 44 Ill. App. 444; Livesay v. Miller, 61 Md. 336; Tyler v. Parr, 52 Mo. 249; Goffe v. Gibson, 18 Mo. App. 1; Gillette v. Ridge, 117 Mo. 553; Bell v. Kaiser, 50 Mo. 150; Timberman v. Craddock, 70 Mo. 638; Gaty v. Foster, 18 Mo. App. 639; Gaty v. Sack, 19 Mo. App. 471; Millan v. Abbott, 31 Mo. App. 563; Brenen v. Roach, 47 Mo. App. 200; Van Dyke Co. v. Walker, 49 Mo. App. 381; Cox v. Bowling, 54 Mo. App. 289; S. W. Co. v. Standard, 44 Mo. 83; S. A. Co. v. Plant, 45 Mo. 519; Henkle v. Dunn, 97 Mo. App. 671. (2)  Where there is no specific time named as limiting a real estate broker's agency the owner may after a reasonable time and in good faith, revoke the agency and sell to the party with whom the broker had been negotiating.  LaForce v. University, 106 Mo. App. 517; Gamble v. Grether, 108 Mo. App. 349; Tooker v. Duckworth, 107 Mo. App. 231.  (3)  There being an entire absence of proof of the allegations of plaintiff's petition and an entire failure of proof that plaintiffs were the procuring cause of the sale, the instructions in the nature of a demurrer requested by the defendant at the close of plaintiff's case and again at the close of all the evidence in the case, should have been given.  Morgan v. Dinfee, 69 Mo. 476; Bank v. Hamline, 68 Mo. App. 487; Champagne v. Hamey, 189 Mo. 709; Kern v. Supreme Council, 167 Mo. 471; Haven v. Railroad, 155 Mo. 216. (4)  Plaintiffs must recover on the theory of their petition or not at all.  Waldheir v. Railroad, 71 Mo. 514; Fuchs v. St. Louis, 167 Mo. 640; Chitty v. Railroad, 148 Mo. 40; Prior v. Railroad, 65 Mo. 267; Webb v. Carter, 121 Mo. App. 155.  (5)  If the action is based on an express contract there can be no recovery on quantum meruit.  Railroad v. Railroad, 189 Mo. 538; Wade v. Nelson, 119 Mo. App. 278, nor on a different contract than the one pleaded.  Crigler v. Duncan, 121 Mo. App. 381.

*H. L. Shannon* for respondents.

(1) Respondent's statement of his cause of action is sufficient to withstand the attack made against it, the suit having been commenced in a justice court. Apitz v. Railroad, 17 Mo. App. 419; Myers v. Woolfolk, 3 Mo. 348; Early v. Fleming, 16 Mo. 154; Barbaro v. Occidental Grove, 4 Mo. App. 429; Reed v. Lee, 64 Mo. App. 683. (2) The objection to respondents' right to recover on the ground that their agreement with appellant provided that appellants must "get their commission above $60.00" is not well founded. While such an agreement would have justified appellant in refusing to accept the price paid by Williams and if he had done so he would not have been liable for a commission, having elected to accept what Williams was willing to give for his land, he is bound to pay respondents for the reasonable value of their services, if they were the procuring cause of the sale as made to Williams. Bell v. Kaiser, 50 Mo. 150; Tyler v. Paul, 52 Mo. 249; Gelatt v. Ridge, 117 Mo. 553. (3) Where the owner of land employs an agent to sell the same, and the efforts of the agent results in a sale, the owner is liable to the agent for a commission although he may not know at the time of making the conveyance that the efforts of his agents were the procuring cause of the sale. Goffe v. Gibson, 18 Mo. App. 1; Millan & Abbott v. Porter, 31 Mo. App. 563. (4) When property is placed in the hands of several agents for sale, the commission in the absence of a distinct contract to the contrary belongs to the agent whose efforts are the procuring cause of the sale, and not to the one who consummates the sale. Brennan v. Roach, 47 Mo. App. 290. (5) In order for a real estate agent to recover his commission, it is not necessary that he should be the first one to have called the attention of the purchaser to the property. If the efforts of the first agent have been abandoned, and the sale is in fact brought about by the second agent, the second agent is

entitled to his commission. Stinde v. Blesche, 42 Mo. App. 578. Neither is it necessary that the agent should have completed the negotiations. Wright & Orion v. Brown, 68 Mo. App. 577; Bell v. Kaiser, 50 Mo. 150; Tyler v. Parr, 52 Mo. 249; Timberman v. Craddock, 70 Mo. 638.

NIXON, P. J.—This was an action commenced before a justice of the peace in the city of Carthage. Trial was had before the justice and an appeal taken to the circuit court. The respondents are real estate brokers and the action is to recover their commission for the sale of the appellant's real estate. Plaintiffs obtained judgment from which the defendant appealed.

The evidence tended to show that defendant owned 160 acres of land in Jasper county, Missouri; that he listed this farm for sale with a number of real estate agents in the city of Carthage, among others, the plaintiffs, and notified plaintiffs that he had listed this farm with other agents and that the man who first made the sale would receive the commission. After the farm had been listed with them the plaintiffs undertook to make the sale, and, in order to effect a sale, opened negotiations with one E. S. Williams. Plaintiffs proposed to Williams that he should go and examine the farm which he did, and some week or so before the trade was made, Williams had examined the farm and showed a disposition to make the trade. The plaintiffs, on account of their business relations with Williams, having previously sold him a farm, thought they had peculiar advantages in handling him as a customer. They had Williams' farm at the time listed for sale which they had advertised, and they had also advertised the farm of the defendant. After some negotiations with Williams, the plaintiffs, in order to induce him to make the trade for the defendant's land, prevailed on him to cut out his farm and put in city property instead. Williams did not want any more land, but desired the money. Plain-

tiffs told Williams they would try and induce defendant to make the change and take the city property instead of trading for the farm. R. H. Crain, one of the plaintiffs, made the proposition to defendant to make this change in his offer. Williams then offered to put in the city property for $1000 with the farm in pursuance to the suggestion of the plaintiffs, and thereupon, after further consultation, made the proposition to put in the city property at $1200 and the farm at the same price at which it had previously been offered. The plaintiffs made several ineffectual attempts to consummate the trade and several times went to see the defendant for the purpose of inducing him to accept the offer. From the time the property was listed, the defendant made frequent visits to the office of the plaintiffs and had frequent conversations about making the trade with Williams. The trade was finally made on the terms the plaintiffs had proposed, the defendant taking Williams' city property at $1200.

The agreement as to compensation at the time defendant first went to plaintiffs' office and listed the land was to the effect that plaintiffs were to sell the land at $60 an acre, net to defendant, and he stated to plaintiffs that they must get their compensation above the $60 an acre. After that, plaintiffs priced the land to customers at $62.50 an acre. After the negotiations had been pending some time, the defendant seemed to become more interested in making the trade with Williams, and he then agreed with plaintiffs, in case they made the trade for Williams' land, to take $60 an acre and pay the plaintiffs' commission out of that, and after this, plaintiffs continued their efforts to make the sale. Plaintiffs represented to Williams that the farm was a good investment at $60 an acre; that he could keep it and put his town property in the trade with the defendant at $1200, and that if he would make that proposition defendant would make the trade, and Williams finally acceded to this proposition. The evidence tended to show that the

services of the plaintiffs were worth $250. Several of the agents with whom defendant had listed his farm claimed to have called Williams' attention to the farm and to have used their persuasive influence to bring about the trade, among others, an agent by the name of Hall. The evidence of the defendant tended to show that Hall made an effort with Williams to dispose of his land and that he visited Williams several times for that purpose. There was evidence for the defendant tending to show that the sale was induced by real estate agents other than the plaintiffs and that the deal was closed with the assistance of Hall.

The statement of the plaintiffs' cause of action filed with the justice of the peace is as follows: (Caption omitted.)

"Plaintiffs say that they are partners doing a real estate commission business under the firm name of Crain & Marrs, and that at the special instance and request of S. W. Miles they found a purchaser for 160 acres of land belonging to said S. W. Miles, and assisted him, the said S. W. Miles in selling said land, and that the reasonable value of such services is $265, and that they have demanded said amount of said S. W. Miles, and that he has wholly failed and refused to pay the same. Wherefore, plaintiffs ask judgment against the defendant for said sum of $265 and costs."

The appellant contends that the petition is wholly insufficient and does not state a cause of action; that while it alleges that plaintiffs were partners doing a real estate business, and that at the instance and request of the defendant they found a buyer and assisted the defendant in making the sale, it does not allege any agreement that defendant was to pay them any specific sum for their services or that any contract or agreement was made between them for a commission or that they were to receive any compensation for their services.

This objection loses sight of the fact that contracts may be of two kinds, express or implied; and that when

one person performs valuable services for another who accepts the same, and the circumstances surrounding the transaction do not show the services were to be gratuitous, or, where one person performs services for another at the latter's request, the law implies a contract to pay their reasonable value. The facts in this case disclose that the defendant listed the land with the plaintiffs as real estate agents and stated to them that he had also listed it with other agents and that the first man who made the sale would receive the commission, and this leaves no question as to the intention of the parties; and when a sale was made pursuant to such understanding, the law implied a contract, and the defendant became bound to pay the plaintiffs the reasonable value of their services. No authorities need be cited to sustain a legal principle so elementary. Besides, this was a statement of a cause of action before a justice of the peace, and its imperfections are not to be viewed with a too critical eye.

It is further contended that there is a fatal variance between the allegations of the petition and the proof, such as to authorize a reversal of the judgment in this case; that plaintiffs cannot plead one cause of action and recover on another not pleaded. The foundation for this claim is that the agreement between the parties was that the land was to be sold at $60 an acre, net to defendant, and that plaintiffs' commission, in case of sale, was to be the excess of $60 an acre. Plaintiff Crain in his testimony stated: "Miles said, 'I want you to get busy now.' He priced it, however, at $60 an acre net to him. He says: 'Now it is in the hands of several real estate men, and you want to get busy.'" If this was all the evidence on the question of plaintiffs' compensation, the defendant's contention would have some merit. But defendant leaves out of view the additional testimony shown by the record to have been produced by plaintiffs at the trial. Plaintiff Crain in addition to the above testified that after the negotiations with Wil-

liams had progressed for some time, defendant got a little more anxious to make the trade with Williams "and agreed to take $60 an acre for his land and pay the commission out of the $60." It will therefore be seen that this contention is wholly without foundation when all the evidence is considered. The evidence of the plaintiffs further showed that $250 was a reasonable compensation for their services, so that the claim of the defendant that plaintiffs sued on one cause of action and recovered on another overlooks controlling facts adduced at the trial of the case.

The court gave the following instruction for the plaintiffs:

"The court instructs the jury that if you believe and find from the preponderance of the evidence that the plaintiffs or either of them suggested to E. S. Williams that the defendant Miles would take from him, the said Williams, a certain piece of property in the city of Carthage at a valuation of $1200 as a part consideration for a farm belonging to the defendant if the said Williams would take said farm subject to a mortgage for $2000 and pay him, the defendant, the difference in cash, and that afterwards the defendant sold said farm to the said Williams for $6000 in cash subject to a mortgage for $2000, and for the further consideration of the said property in the city of Carthage, and you further believe and find from a preponderance of the evidence that said suggestion made by plaintiffs or one of them if it was made, was the procuring cause of said sale and finally brought about the agreement as made between the defendant and the said Williams for the sale of said farm to said Williams, then your verdict should be for the plaintiffs, in a sum not exceeding $250 which you find from the evidence the services of plaintiffs were reasonably worth."

The court gave the following instructions for the defendant:

"The court instructs the jury that the burden of proof is on the plaintiffs to establish: (1) The employment of the plaintiffs by the defendant for the purpose and on the terms mentioned in plaintiffs' petition.   (2) That the plaintiffs were the efficient and procuring cause of the sale by the defendant Miles, of the farm mentioned in evidence to Mr. Williams, and unless you believe and find from the evidence that the plaintiffs have so proved these facts you will find the issues in favor of the defendant.

"The court instructs the jury that unless the plaintiffs sold defendant's real estate on the terms given them by defendant or procured a purchaser therefor, ready, willing and able to purchase defendant's property on such terms, plaintiffs cannot recover unless they shall further find that after having been fully informed of the variations made by plaintiffs in selling said real estate from the instructions given them, defendant approved of these variations and ratified the contract of sale as made by plaintiffs.

"The court instructs the jury that although you may believe and find from the evidence that the defendant did on or about the — day of ———, 1909, contract and agree with plaintiffs as alleged in plaintiff's petition and that no time was fixed as to when the agency should terminate, yet you are instructed that such employment is in law only for a reasonable time, and what is a reasonable time depends on the intention of the parties as gathered from all the facts and circumstances in the case, and if within a reasonable time, as herein defined, plaintiffs failed to consummate the sale, and failed to induce E. S. Williams to buy, the defendant had a right to employ other agents to make the sale for him, or to make the sale himself, without notice to the plaintiffs, even to a person to whom plaintiffs introduced him, and if under these circumstances defendant through another agent or him-

self, sold in good faith to Williams, the plaintiffs cannot recover."

For further assignment of error the appellant claims that the evidence wholly fails to show that the plaintiffs were the procuring cause of the sale and that there was no evidence which authorized the court to submit that question to the jury.

The law is well-established in this state that to entitle a real estate broker to his commission he must be the efficient cause in finding a purchaser; that it is not sufficient that the act of the broker was one of a chain of causes bringing about the sale, but in order for the broker to recover for his services, his act or acts must have been the procuring or inducing cause, and the burden is upon him to show, not only that he opened negotiations with the purchaser, but that the sale was actually effected through his means and not by the intervention of new parties or upon different terms. And where an agent fails to get his offer within the terms of his authorization and the purchaser afterwards buys the same piece of property on the same or less terms than those on which the first agent had authority to sell, the chain of causation would be broken since the efforts of the first agent would have produced no result and his labors would not be the proximate, legal or procuring cause, and therefore he would not be entitled to any compensation.

Objection is made to the instruction given for the plaintiff wherein the court charged that "if the jury believe and find from the preponderance of the evidence that the plaintiffs or either of them suggested to E. S. Williams that the defendant Miles would take from him, the said Williams, a certain piece of property," etc. This, of itself, would not have been sufficient. However, the instruction does not stop there, but proceeds to state, "that if said suggestion made by the plaintiffs if it was made, was the procuring cause of the sale and finally brought about the agreement as made between

the defendant and the said Williams for the sale of said farm to said Williams," etc. This clause, considered in connection with the preceding part of the instruction, contained a correct exposition of the law of the case. The owner of real estate may authorize more than one agent to sell, and in the absence of a distinct contract to the contrary, where a sale is made, the commission belongs to the agent whose efforts are the procuring cause of the sale, no matter which one may close the deal. [Gerhardt Real Estate Co. v. Marjorie Real Estate Co., 144 Mo. App. 620, 129 S. W. 419.] The instructions given by the learned court contained a full declaration of the law and were applicable to the facts and are not vulnerable to appellant's criticism.

It is further contended that the evidence in this case showed there was no specific time within which the plaintiffs should sell the defendant's land, and that under such circumstances the owner of the land, after a reasonable time, and in good faith, could revoke the agency. The law is undoubtedly well-settled that where an agent sets on foot a sale of property which wholly fails, and after such failure, another agent steps in and makes the sale to the parties negotiated with by the first agent, if the first agent has shown his inability to make the sale, and even though there is a possibility that the work of the first agent made some impression or had something to do with the sale, yet under such a state of facts, in legal contemplation, the first agent would not effect the sale and consequently would not be entitled to any compensation. [LaForce v. The Washington University, 106 Mo. App. 517, 81 S. W. 209.] The court in this case gave an instruction for the defendant which fully embodied and fairly presented this phase of the law and properly submitted the question to the jury. The jury have found for the plaintiffs and their finding as to matters of fact is conclusive upon us.

Appellant also contends that the court refused to permit him to prove by a son of the defendant that some two years before the trade to Williams, he called Williams' attention to the farm and made an effort to sell it to him. Appellant in this connection states: "The evidence in this case shows that numerous agents and others directed Williams' attention to the farm, and the fact that it was for sale by the defendant Miles." Under this condition of the evidence, the testimony of defendant's son, excluded by the court, was cumulative, and its exclusion under such circumstances would not constitute reversible error.

The law in this case has been properly declared and the issues of fact submitted to the jury; they have decided adversely to the appellant and their decision is inviolable so far as the appellate court is concerned. The law has provided appellate courts with glasses to detect evidence but no balances with which to weigh it, but has relegated the duty of weighing the facts exclusively to the jury. Finding no errors materially affecting the merits of the case, the judgment is affirmed. *Cox, J.,* concurs; *Gray, J.* not sitting.